UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LANITA D. PEVERLY, <br><br> Plaintiff, <br><br> v. <br><br> CAROLYN W. COLVIN, Acting Commissioner of Social Security, <br><br> Defendant. | NO.  C14-911-RAJ-JPD <br><br><br> REPORT AND RECOMMENDATION |

Plaintiff Lanita D. Peverly appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, after a hearing before an administrative law judge ("ALJ").  For the reasons set forth below, the Court recommends that the Commissioner's decision be affirmed.

I.   FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, Plaintiff was a 63-year-old woman with some college and technical-school education.  Administrative Record ("AR") at 42-43.  Her past work experience includes employment as a home health aide and in airline reservation sales. AR at 152.  Plaintiff was last gainfully employed in August 2011.  AR at 151.

REPORT AND RECOMMENDATION - 1

On September 20, 2011, Plaintiff filed an application for DIB, alleging an onset date of August 5, 2011. AR at 133-34. Plaintiff asserts that she is disabled due to diabetes, asthma, migraines, osteoporosis, fibromyalgia, back injury, sciatica, shoulder injury, neck injury, and knee pain. AR at 151.

The Commissioner denied Plaintiff's claim initially and on reconsideration. AR at 73-76, 79-83. Plaintiff requested a hearing, which took place on January 9, 2013. AR at 40-53. On February 13, 2013, the ALJ issued a decision finding Plaintiff not disabled and denied benefits based on his finding that Plaintiff could perform her past work as a reservations agent. AR at 18-35. After reviewing additional evidence, the Appeals Council denied Plaintiff's request for review. AR at 1-5. On June 19, 2014, Plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 1, 3.

## II.   JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a

REPORT AND RECOMMENDATION - 2

whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

### IV. EVALUATING DISABILITY

As the claimant, Ms. Peverly bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V. DECISION BELOW

On February 13, 2013, the ALJ found:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2015.

2. The claimant has not engaged in substantial gainful activity since August 5, 2011, the alleged onset date.

3. The claimant's degenerative disc disease of the lumbar spine, migraine headaches, and obesity are severe.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. The claimant has the RFC to perform sedentary work as defined in 20 CFR 404.1567(a). She can occasionally balance, crouch, kneel, stoop, balance, and climb ramps or stairs. She should never climb ladders, rope, or scaffolding, and that she should avoid concentrated exposure to hazards.

6. The claimant is capable of performing past relevant work as a reservations agent. This work does not require the performance of work-related activities precluded by the claimant's RFC.

7. The claimant has not been under a disability, as defined in the Social Security Act, from August 5, 2011, through the date of the decision.

AR at 20-33.

## VI. ISSUES ON APPEAL

The principal issues on appeal are:

REPORT AND RECOMMENDATION - 5

1. Whether the ALJ erred at step two by finding Plaintiff's fibromyalgia and neuralgia of the nose status post septorhinoplasty were not severe;

2. Whether the ALJ properly discounted Plaintiff's credibility; and

3. Whether the ALJ properly assessed medical opinions.

Dkt. 13 at 1.

## VII.   DISCUSSION

A.   <u>The ALJ Did Not Err at Step Two.</u>

The ALJ found that although Plaintiff reported a 1990 fibromyalgia diagnosis to a consultative examiner (AR at 236), the record does not contain any test results confirming this diagnosis or any records of fibromyalgia treatment, and thus fibromyalgia is not a medically determinable impairment. AR at 25 n.8. The ALJ also found that any neuralgia following Plaintiff's nose surgery was inconsistent with the medical knowledge of her treating physicians. AR at 27-29. Plaintiff contends that the ALJ erred as to fibromyalgia because he should not have held her failure to receive treatment against her, because she lacked medical insurance and could therefore not afford treatment, and because the consultative examiner included fibromyalgia among his list of diagnosed conditions (AR at 240). Plaintiff also points to records that the ALJ himself cited (AR at 28), indicating that she complained of nerve issues in the years after her nose surgery, and that physicians credited her complaints of neuralgia even if they were "unusual" or "peculiar."

1. *Legal Standards at Step Two*

At step two, a claimant must make a threshold showing that his or her medically determinable impairments significantly limit his or her ability to perform basic work activities. *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987); 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§

REPORT AND RECOMMENDATION - 6

404.1521(b), 416.921(b). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen*, 80 F.3d at 1290 (quoting Social Security Ruling ("SSR") 85-28). "[T]he step two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290 (citing *Bowen*, 482 U.S. at 153-54).

To establish the existence of a medically determinable impairment, the claimant must provide medical evidence consisting of "signs – the results of 'medically acceptable clinical diagnostic techniques,' such as tests – as well as symptoms," a claimant's own perception or description of his or her physical or mental impairment. *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005). A claimant's own statement of symptoms alone is *not* enough to establish a medically determinable impairment. *See* 20 C.F.R. §§ 404.1508, 416.908.

2. *Fibromyalgia*

The ALJ noted that although a consultative examiner listed fibromyalgia among Plaintiff's diagnosed conditions, the examiner's report does not document any testing or otherwise support the bare diagnosis. AR at 25 n.8. This diagnosis is not sufficient to establish the existence of fibromyalgia, under SSR 12-2p, 2012 WL 3104869 (Jul. 25, 2012), because the examiner did not record the requisite testing or any testing at all, but simply asserted that Plaintiff "meets the criteria for fibromyalgia." AR at 240. There is no mention of tender-point testing or evaluation of the fibromyalgia symptoms that constitute fibromyalgia diagnostic criteria according to either of the protocols mentioned in SSR 12-2p. 2012 WL 3104869, at *2-3. Accordingly, the ALJ did not err in finding that fibromyalgia was not established as a medically determinable impairment.[2]

---

[2] Because the ALJ did not err in finding that the existence of fibromyalgia was not supported by the record, any argument that the ALJ should have considered the rationale for

REPORT AND RECOMMENDATION - 7

3.     *Neuralgia Following Nose Surgery*

The ALJ summarized Plaintiff's medical complaints following her nose surgery, emphasizing that although Plaintiff did complain of nose paresthesia, she reported immediate relief after an injection and yet did not pursue additional injections or follow up with her physicians to pursue a course of treatment. AR at 28-29 (citing AR at 231, 234). As the ALJ noted, two physicians also indicated that Plaintiff's complaint of paresthesia in her nose was "very peculiar," "unusual," and "extremely unusual," because of the lack of nerve distribution in the identified area. AR at 231, 234. The ALJ also found Plaintiff's allegations that her nose paresthesia caused migraine headaches, blurred vision, dizziness, nausea, vomiting, and bowel incontinence were inconsistent with her self-reported ability to knit/crochet, drive, shop for groceries, work before her alleged onset date, prepare meals, and complete household chores. AR at 29. Based on these inconsistencies, Plaintiff's physicians' inability to "medically explain or justify possible etiology of the claimant's complaints and alleged symptoms," and Plaintiff's inconsistent reporting of symptoms and efforts to seek treatment, the ALJ found that her complaints of nose paresthesia were not credible. AR at 28-30.

Although Plaintiff identifies the error in the ALJ's reasoning as a step-two error, she fails to acknowledge that the ALJ found Plaintiff's migraine headaches — the symptom that Plaintiff reported experiencing as a result of her nose paresthesia — to be severe at step two. In arguing that the ALJ erred in failing to include neuralgia[3] resulting from her nose surgery at step two, Plaintiff points to the opinion of a consultative examiner that "migraine headaches arising from her status post septorhinoplasty" were a "significantly limiting morbidity" for the

---

Plaintiff's failure to seek fibromyalgia treatment is irrelevant. Whether or not Plaintiff was justified in failing to seek treatment, the lack of documentation in the record for the fibromyalgia diagnosis supports the ALJ's step-two finding.

[3] Plaintiff did not testify to any limitations caused by the paresthesia that were not connected to migraine headaches. AR at 47-49.

REPORT AND RECOMMENDATION - 8

Plaintiff (AR at 240), but does not identify a harmful step-two error, because the ALJ *did* include migraine headaches at step two. Plaintiff fails to explain how the ALJ's characterization of Plaintiff's condition as migraine headaches, as opposed to neuralgia status post septorhinoplasty, resulted in error. Whether the ALJ should have credited Plaintiff's description of limitations caused by migraine headaches is a separate issue related to the ALJ's credibility determination, which is addressed in the following section, *infra*.

B.   The ALJ's Credibility Determination Does Not Contain Harmful Error.

The ALJ provided a number of reasons for discounting Plaintiff's credibility, including (1) inconsistencies between Plaintiff's self-reported symptoms and medical evidence, (2) lack of treatment for alleged impairments, (3) Plaintiff's use of an assistive device without medical recommendation, and (4) inconsistencies between Plaintiff's self-reported limitations and her daily activities. AR at 25-30.[4] The Court will address each reason in turn.

1.   *Legal Standards on Evaluating Credibility*

As noted above, credibility determinations are within the province of the ALJ's responsibilities, and will not be disturbed, unless they are not supported by substantial evidence. A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281; SSR 96-7p, 1996 WL 374186 (Jul. 2, 1996). First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82; SSR 96-7p. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not

---

[4] Plaintiff contends that the ALJ relied on a social worker's statement to discredit Plaintiff's credibility. Dkt. 13 at 15-16. The ALJ did not explicitly cite the social worker's statement as a reason to discount Plaintiff's credibility, but instead discussed the statement in the context of weighing its probative value. AR at 30-31.

REPORT AND RECOMMENDATION - 9

discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988). Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

When evaluating a claimant's credibility, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Smolen*, 80 F.3d at 1284; *see also Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

2. *Lack of Support in Medical Record*

Plaintiff claimed that she could not work due to a number of impairments, but the ALJ found that the existence of some of these alleged impairments (fibromyalgia, osteoporosis, shoulder impairment, osteoarthritis of the hips, fractures of the ribs and legs, fatty liver, arm sprain, and left breast pain) was not supported by the medical record. AR at 25-26. Plaintiff disputes some of these findings, arguing that the ALJ should have considered that her medical record is thin due to lack of ability to afford insurance or treatment from August 2011 to December 2012 (Dkt. 13 at 9), but the ALJ reviewed medical records pre-August 2011 and found a lack of support for those impairments during the time that Plaintiff did have insurance as well. AR at 25-26.

REPORT AND RECOMMENDATION - 10

Plaintiff also challenges the ALJ's rejection of her obstructive sleep apnea diagnosis, arguing that the medical record contains reference to this diagnosis and thus her reference to sleep apnea does not undermine her credibility. Dkt. 13 at 9-10 (citing AR at 283). The medical record does contain a reference to obstructive sleep apnea, but it is referenced in a list of Plaintiff's subjective report of problems, rather than as a diagnosis. AR at 283. Plaintiff later reported to a social worker that she had not obtained the machine recommended to address her sleep apnea, and appeared to attribute her problems sleeping to pain rather than apnea. AR at 386. In any event, the ALJ's interpretation of the evidence regarding sleep apnea is reasonable, because the record supports a finding that Plaintiff did not follow up or comply with treatment recommendations regarding sleep apnea. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). Furthermore, Plaintiff did not assert that her sleep apnea was a disabling impairment, and thus the ALJ's analysis of this condition is at most harmless error because it would not affect the overall disability determination or the overall credibility determination.

3.    *Inconsistent Reporting*

The ALJ found that Plaintiff's "inconsistent reporting" of visual disturbances, nausea, vomiting, and dizziness associated with her migraine headaches "detracts from her credibility as to the nature and severity of her headaches." AR at 30. Plaintiff argues that the ALJ manufactured inconsistencies in her testimony, ignoring the fact that she lacked health insurance, that she eventually stopped working as her migraine headaches became worse, and because the record contains descriptions of Plaintiff's reported symptoms. Dkt. 13 at 10-13.

Plaintiff's arguments do not address the crux of the ALJ's point: Plaintiff did not consistently report to her providers all of the symptoms she now argues make her disabled. For example, she did not report dizziness, pain, or headaches associated with wearing her

REPORT AND RECOMMENDATION - 11

glasses at her an optometry visit in April 2010, which was the only documented optometry visit in the record. AR at 28 (citing AR at 336-40). She also failed to mention any headaches, nausea, vomiting, visual disturbances, dizziness, or incontinence when she visited a physician in December 2010 to discuss her nose paresthesia. AR at 28 (citing AR at 234). When she visited a physician in August 2011, she denied incontinence and did not report vomiting. AR at 29 (citing AR at 231). But by the time of her consultative examination in December 2011, Plaintiff reported that while she was working (up until August 2011), her migraine headaches caused dizziness, nausea, vomiting, and bowel incontinence. AR at 29 (citing AR at 236). Plaintiff further reported at the administrative hearing that she stopped working because she had visual disturbances, nausea, bowel incontinence, and falls as a result of migraines. AR at 44. The ALJ did not err in construing these reports of symptoms to be inconsistent, and in discounting Plaintiff's credibility on that basis. *See* SSR 96-7p, 1996 WL 374186, at \*5 ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record.").

    4.    *Lack of Treatment*

Plaintiff admits that she did not seek treatment for all of her claimed impairments, but claims that she did not do so because of her lack of medical insurance and financial resources. Dkt. 13 at 13. It is true that Plaintiff testified that she was unable to seek treatment after her insurance coverage ended in August 2011, but the ALJ pointed to pre-August 2011 instances of Plaintiff's failure to either seek treatment for alleged impairments or to follow through on treatment options. AR at 25, 28. The ALJ did not err in finding that Plaintiff's lack of treatment for various impairments undermined the credibility of her disability allegation. *See Molina v. Astrue*, 674 F.3d 1104, 1113-14 (9th Cir. 2012).

//

5.  *Assistive Device*

Plaintiff reported that she required the use of a device, such as a cane or walker, in order to ambulate. AR at 46, 388. The ALJ noted that the record contains no prescription or "medical recommendation" for assistive devices, and construed Plaintiff's use of devices against her credibility, under SSR 96-9p.[5] AR at 27. Ninth Circuit authority supports the ALJ's inference in situations where medical providers specifically opine that a claimant does not require the use of an assistive device, but the claimant uses a device against medical advice. *See, e.g.*, *Chaudhry v. Astrue*, 688 F.3d 661, 664, 672 (9th Cir. 2012); *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999); *Cotton v. Astrue*, 374 Fed. Appx. 769, 771 (9th Cir. Apr. 2, 2010); *Donathan v. Astrue*, 264 Fed. Appx. 556, 558 (9th Cir. Jan. 14, 2008).

In this case, consultative examiner Frederick Thurston Drake, M.D., opined in December 2011 that Plaintiff did not need to use an assistive device. AR at 239. It appears that Plaintiff did not use an assistive device at that time, or at least did not use one in Dr. Drake's presence or report her use to him. AR at 239. Indeed, in her October 2011 function report, Plaintiff denied using a cane or walker. AR at 176. She did report using a cane in November 2012, and a social worker ordered a walker on Plaintiff's request at that time. AR at 388, 433. Therefore, the evidence does not support an inference that Plaintiff used assistive devices against medical advice; at most, she may have used devices without first seeking medical advice, but such use would not undermine her allegations. The Commissioner does not address these aspects of the record, or defend the ALJ's reasoning as to Plaintiff's use of assistive devices. This reason is not clear and convincing, and does not support the ALJ's

---

[5] SSR 96-9p, 1996 WL 374185, at *7 (Jul. 2, 1996), does not address credibility findings related to a claimant's use of an assistive device. Instead, this ruling addresses how a claimant's medically required hand-held assistive device can affect the claimant's ability to perform work.

REPORT AND RECOMMENDATION - 13

adverse credibility determination.

### 5.    *Daily Activities*

The ALJ stated that Plaintiff's ability to knit and/or crochet, drive, and shop for groceries undermines the credibility of her complaints, as does her ability to work as a hairstylist between 2006 and 2011. AR at 29. Plaintiff argues that the record does not support these findings, and notes that the ALJ did not cite any portion of the record. Dkt. 13 at 16. The record does, however, contain evidence supporting the ALJ's findings. As the ALJ indicated (AR at 29), Plaintiff testified at the hearing that she continues to knit and crochet, drives, and shops for groceries at nearby stores. AR at 46. In October 2011 (after the alleged onset of disability), Plaintiff alleged that she could prepare complete meals and snacks, and manage household chores, including laundry and vacuuming, and that she did not require any assistance in completing her activities of daily living. AR at 172, 177. At that time she also reported that she had no limitations in her ability to sit or stand, despite her hearing testimony that she could not sit or stand for longer than fifteen or twenty minutes. *Compare* AR at 47 *with* AR at 175. The ALJ reasonably found Plaintiff's self-described abilities to be inconsistent with her allegations of debilitating limitations. *Molina*, 674 F.3d at 1112-13.

As to the ALJ's findings regarding Plaintiff's work history, Plaintiff testified at the administrative hearing that "subsequent to" 2005, she worked as a hairstylist in California and Washington. AR at 43-44. Plaintiff's brief argues that she misunderstood the meaning of "subsequent," and intended to testify that she worked as a hairstylist *prior to* the job she ended in 2005. Dkt. 13 at 16-17 (citing AR at 158, 169). The record contains conflicting information as to Plaintiff's work history, and any misunderstanding as to Plaintiff's experience as a hairstylist does not negate the ALJ's undisputed finding that Plaintiff was able to pursue

training for and work as a certified home health caregiver, during a period in which Plaintiff claimed to have debilitating symptoms. AR at 44, 158, 160.

In sum, the ALJ provided a number of clear and convincing reasons to discount Plaintiff's credibility. One of his reasons, related to the assistive device, was not clear and convincing, but the remaining reasons are supported by substantial evidence and the error does not negate those reasons. Thus, the error is harmless and the ALJ's adverse credibility determination should be affirmed. *Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

C.   <u>The ALJ Did Not Err in Assessing Medical Opinions.</u>

Plaintiff assigns error to the ALJ's assessment of medical opinions provided by Plaintiff's treating physician Marthlyn Jones, M.D., and consultative examiner Dr. Drake. The Court will address each provider's opinion in turn.

1.   *Legal Standards on Evaluating Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751; *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick*, 157 F.3d at 725. "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881

F.2d at 751).  The ALJ must do more than merely state his/her conclusions.  "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).  Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.*  An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors.  *Lester*, 81 F.3d at 831.  However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them.  In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it.  SSR 96-6p, 1996 WL 374180, at *2.  Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record.  *Thomas*, 278 F.3d at 957; *Orn*, 495 F.3d at 632-33.

2.  *Dr. Jones*

Plaintiff's treating physician wrote two narrative opinions on her behalf, describing her nasal injury and resulting surgery and ensuing migraine headaches, and the functional limitations caused thereby.  AR at 247, 360.  The ALJ rejected these opinions as based entirely on Plaintiff's subjective self-report, and pointed to medical records showing that Plaintiff did not report to Dr. Jones all of the symptoms that Dr. Jones described.  AR at 31.  The ALJ also

REPORT AND RECOMMENDATION - 16

found that Dr. Jones's opinions were inconsistent with "all prior medical examinations and reports." AR at 31.

These findings are supported by substantial evidence in the record. Dr. Jones wrote a letter on Plaintiff's behalf in August 2011, although she had not examined Plaintiff herself since April 2010, at which time Dr. Jones did not record any specific symptoms or limitations beyond "chronic headaches." AR at 342, 360. Dr. Jones did receive a copy of a neurology appointment notes (AR at 230-31), which describe some of the symptoms listed in Dr. Jones's August 2011 letter, but do not mention poor depth perception or incontinence. *Compare* AR at 230-31 *with* AR at 360. Dr. Jones's February 2012 opinion was drafted after one appointment — apparently the first in-person visit since April 2010 — in which Plaintiff simply reported her symptoms to Dr. Jones and requested a letter to support her disability application. AR at 247, 250. Plaintiff argues that she would not have been able to afford any testing or examination, due to her lack of insurance at that time (Dkt. 13 at 18), but the record does not indicate that Dr. Jones offered to perform any testing or that Plaintiff refused any testing on account of financial limitations. AR at 250.

Instead, it appears that Dr. Jones wrote her opinions on the strength of Plaintiff's subjective complaints alone, and the ALJ was entitled to discount such opinions in light of his finding that Plaintiff's subjective complaints lack credibility. Although Plaintiff argues that the ALJ ignored the treatment notes of "Dr. Jones and other providers which support her opinion" (Dkt. 13 at 19), Plaintiff does not identify any treatment notes (not simply subjective reports contained in a treatment note) that actually do support Dr. Jones's opinions. The ALJ did not err in discounting Dr. Jones's opinions. *See Tommasetti,* 533 F.3d at 1041 (affirming an ALJ's rejection of a medical opinion where the physician's records largely reflect claimant's reports of pain "with little independent analysis or diagnosis").

REPORT AND RECOMMENDATION - 17

3.  *Dr. Drake*

Consultative examiner Dr. Drake included migraine headaches among his diagnoses, and described the headaches as a "significantly limiting morbidity for this claimant[,]" but did not list any functional limitations caused by the headaches in the section of his report describing Plaintiff's functional assessment. AR at 240-41. The ALJ gave significant weight to Dr. Drake's functional assessment. AR at 32. Plaintiff argues that the ALJ erred in ignoring Dr. Drake's opinion that her headaches were significantly limiting.

Dr. Drake did opine that Plaintiff's headaches were significantly limiting, but then did not go on to identify any particular functional limitations that resulted from her headaches; he instead found Plaintiff capable of performing sedentary work with additional postural and environmental restrictions. AR at 240-41. Plaintiff argues that the ALJ erred in failing to credit Dr. Drake's opinion regarding headaches as a "significantly limiting morbidity[,]" and that the ALJ should view Dr. Drake's opinion as supporting Dr. Jones's opinion that Plaintiff must avoid wearing her glasses. Dkt. 13 at 19-20. Plaintiff fails to acknowledge, however, that Dr. Drake did not actually opine that Plaintiff should avoid wearing her glasses or identify any glasses- or vision-related limitations caused by her headaches. The ALJ is not required to assume that a physician intended to opine that any particular limitation flows from an impairment, and thus did not err in failing to account for Dr. Drake's vague description of an impairment as "significantly limiting." *See, e.g.*, *Turner v. Comm'r of Social Sec.*, 613 F.3d 1217, 1220, 1222-23 (9th Cir. 2010) (finding that although a physician had diagnosed a claimant with a disorder, the physician's failure to assign limitations based on that disorder obviates the need for the ALJ to explain why the opinion was rejected, because the ALJ did not actually reject any of the physician's conclusions).

## VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that this case be AFFIRMED. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **March 9, 2015**. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **March 13, 2015.**

This Report and Recommendation is not an appealable order. Thus, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge acts on this Report and Recommendation.

DATED this 23rd day of February, 2015.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge